FILED
APR 27 2011
CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

**DYNAMIS, INC.,**
**Plaintiff,**

**v.** **Case No. 1:11cv143**

**DYNAMIS.COM,**
**Defendant.**

**ORDER**

There are two motions at bar in this *in rem* Anticybersquatting Consumer Protection Act ("ACPA")[1] matter: (i) a motion to dismiss submitted *pro se* by Ruedi Brenner as sole proprietor of BBTT Brenner Beratung & Training ("BBTT"), the holder and registrant of the domain name in issue; and (ii) a motion by plaintiff Dynamis, Inc. to enforce the magistrate judge's February 23, 2011 publication order by setting a deadline for the domain name to file a responsive pleading or else to have default entered.

For the reasons that follow, it is appropriate to deny Brenner's motion to dismiss and to grant plaintiff's motion to enforce the publication order.

**I.**

Plaintiff Dynamis, a Virginia corporation engaged in national security research and services using the mark DYNAMIS, brought this *in rem* action under the ACPA, specifically 15 U.S.C. § 1125(d)(2), against the domain name DYNAMIS.COM, seeking transfer of the domain name from its current registrant to plaintiff. Brenner is a resident of Switzerland and sole proprietor of BBTT, the holder and registrant of the DYNAMIS.COM domain name. Dynamis alleges that Brenner is a cybersquatter, holding the DYNAMIS.COM domain name in bad faith

---

[1] *See* 15 U.S.C. § 1125(d).

with the intent to profit from plaintiff's DYNAMIS trademark. Brenner, apparently intending to make only a limited appearance,[2] challenges personal jurisdiction over him and BBTT and seeks dismissal, asserting, *inter alia*, that the allegations of cybersquatting are meritless.

A brief overview of the statutory requirements for an *in rem* ACPA action provides useful context for understanding this matter's procedural history. Under § 1125(d)(2), the owner of a trademark may file an action *in rem* against an infringing domain name in the judicial district in which the domain name registrar is located provided either that (i) the domain name holder is not subject to personal jurisdiction in the given forum, or (ii) the domain name holder cannot be found after appropriate due diligence as set forth in § 1125(d)(2)(A)(ii)(II). The statutory due diligence under § 1125(d)(2)(A)(ii)(II) requires, *inter alia*, that notice of the action be published "as the court may direct promptly after filing the action." *Id; see also Banco Inverlat, S.A. v. www.inverlat.com*, 112 F. Supp. 2d 521, 523 (E.D. Va. 2000) (discussing the statutory requirements for an *in rem* ACPA action).

In light of these statutory provisions, two orders issued following plaintiff's filing of the complaint in this case. First, on February 23, 2011 the magistrate judge, pursuant to 15 U.S.C. § 1125(d)(2)(A)(ii)(II)(bb), issued an order for publication of notice of this action in the *Washington Times* newspaper. *See Dynamis, Inc. v. Dynamis.com*, No. 1:11cv143 (E.D. Va. Feb. 23, 2011) (Order). Plaintiff published such notice in the *Washington Times* on February 24, 2011. Second, on March 23, 2011, an Order issued requiring plaintiff to demonstrate by appropriate pleading that the domain name holder is not subject to personal jurisdiction. *See Dynamis, Inc. v. Dynamis.com*, No. 1:11cv143 (E.D. Va. Mar. 23, 2011) (Order) ("March 23 Order"). The March 23 Order also struck an improper filing mailed to the Clerk by Brenner on

[2] *See Tomai-Minogue v. State Farm Mut. Auto. Ins. Co.*, 770 F.2d 1228, 1233 (4th Cir. 1985) (recognizing that a defendant may enter a special appearance to challenge personal jurisdiction).

behalf of BBTT, noting that the filing did not comply with Local Civil Rule 83.1, which requires that submissions be made only by practitioners admitted to practice generally in this district or *pro hac vice* in this district, or by individual parties acting *pro se*. *See* March 23 Order, at 2.

In response to the March 23 Order, plaintiff filed a motion and memorandum on April 1, 2011. In this memorandum, plaintiff provided argument and exhibits demonstrating that BBTT is the domain name holder and is not subject to personal jurisdiction in any judicial district of the United States. Thus, plaintiff asserts that proceeding *in rem* against the domain name is appropriate, and accordingly plaintiff moves for the imposition of a deadline by which the domain name shall file a responsive pleading or else be held to be in default.

On April 4, 2011, the Clerk received a second mailed submission by Brenner. In this submission, Brenner requests leave to proceed *pro se* and moves to dismiss the *in rem* complaint for lack of personal jurisdiction, lack of service, and failure to state a claim. Given that Brenner's previous filing was stricken as improperly filed, the Clerk did not immediately accept Brenner's filing, and instead arranged for the filing to be judicially reviewed to determine whether the filing comports with the Local Civil Rules.

**II.**

It is appropriate to consider Brenner's motion first, as it seeks dismissal of the complaint. As an initial matter, it must be determined whether Brenner's motion may be filed *pro se*. In this regard, Brenner represents that BBTT is a proprietorship of which he is the sole owner and proprietor, thus, he seeks permission to proceed *pro se* in defense of the domain name. As Brenner correctly points out, sole proprietors are entitled to represent their sole proprietorships *pro se* in litigation. *See RZS Holdings AVV v. PDVSA Petroleo S.A.*, 506 F.3d 350, 354 (4th Cir. 2007) (citing with approval the Second Circuit's holding that "a sole proprietorship has no legal existence apart from its owner, and that an individual owner may represent his sole

proprietorship in a pro se capacity" (citing *Lattanzio v. COMTA*, 481 F.3d 137, 140 (2d Cir. 2007))). Given Brenner's representation that BBTT is his solely owned proprietorship, it is appropriate to grant his request and to allow his *pro se* motion to be docketed.

Yet, it is important to note that because Brenner has clearly and timely objected to personal jurisdiction, his appearance in this matter does not operate as consent to personal jurisdiction. This point merits elaboration. Well established law permits a defendant to appear for the limited purpose of challenging personal jurisdiction provided the jurisdictional objection is timely raised. *See Davenport v. Ralph N. Peters & Co.*, 386 F.2d 199, 207-208 (4th Cir. 1967); *see also* Rule 12(h)(1), Fed. R. Civ. P. (objections to personal jurisdiction must be made in first responsive pleading or it is waived). But a party who appears for purposes beyond an attack on personal jurisdiction may risk being found to have voluntarily submitted to a court's jurisdiction.[3] Sensibly, however, some commentators have pointed out that it may be a Due Process violation to force a defendant to choose between forfeiting his property on the one hand, and on the other, defending his property but subjecting himself to personal jurisdiction. *See* 4B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1123 (2010). It should be noted that in the event Brenner is deemed to be subject to personal jurisdiction in this district, the matter would then have to proceed against Brenner *in peronsam*, rather than against the domain name *in rem*. *See* 15 U.S.C. § 1125(d)(2); *see also Porsche Cars N. Am., Inc. v. Porsche.net*, 302 F.3d 248, 255 (4th Cir. 2002) (noting that "the structure of the ACPA undoubtedly expresses Congress's preference for *in personam* suits"). In any event, whether

---

[3] *See, e.g.*, *Norfolk Southern R. Co. v. Foreman*, 244 F. 353 (4th Cir. 1917) (defendant, after unsuccessfully moving to quash service, failed to preserve its objection to personal jurisdiction when it litigated the merits); *but see Nolan v. Jensen*, 272 F.2d 630 (4th Cir. 1959) (distinguishing *Foreman* and holding that a litigant's diligent preservation of its jurisdictional objection is not waived by litigating the merits).

Brenner's continued *pro se* participation in this matter might subject him in the future to personal jurisdictional in this forum is a question neither reached nor decided here. Rather, it is appropriate at this time to hold only that Brenner's actions thus far—namely, his limited appearance and his filing the present motion to dismiss—do not operate as consent to personal jurisdiction. Brenner should keep in mind that as a *pro se* litigant, he may be required to travel to the United States for court hearings. Failure to appear for such hearings may subject Brenner to sanctions. Of course, if Brenner hires local counsel, counsel will be able to appear on his behalf and Brenner's presence in the United States may not be required.[4]

It is appropriate to turn next to the substance of Brenner's objections. First, Brenner contends that the action should be dismissed because he is not subject to personal jurisdiction. It is quite clear on this record that plaintiff and Brenner agree that neither Brenner nor BBTT are subject to personal jurisdiction in this forum or in any judicial district in the United States. But this conclusion does not require the complaint's dismissal; rather, lack of jurisdiction over the person of the domain name holder means that, as here, the action may only proceed *in rem* against the domain name itself. *See* § 1125(d)(2); *see also Porsche*, 302 F.3d at 254. Thus, this action appropriately proceeds *in rem* against DYANMIS.COM, the putatively infringing domain name.

Second, Brenner contends that he has not been properly served. In this respect, service of the complaint is governed by the ACPA, which explains that service is complete when (i) the complaint is sent to the postal and e-mail address of the domain name registrant and (ii) notice of

---

[4] Of course, there may yet be instances where Brenner's personal appearance would be required, such as if a trial were held, but those questions are not raised at this time. Additionally, the case may be resolved on summary judgment without the need for trial, if no genuine disputes of material fact exist. *See* Rule 56, Fed. R. Civ. P.

the action is published as judicially directed. § 1125(d)(2)(A)(ii)(II). Plaintiff has completed these steps, and no further service is required at this stage.[5]

Finally, because the Federal Rules of Civil Procedure allow a party denying jurisdiction and service to bring a Rule 12(b)(6) challenge without waiving the jurisdictional objection,[6] it is appropriate to consider Brenner's Rule 12(b)(6) argument as well. Analysis of a Rule 12(b)(6) motion appropriately begins with the elements of a cybersquatting claim. To establish such a claim, plaintiff must allege (i) that the DYNAMIS.COM domain name is identical or confusingly similar to the DYNAMIS mark, and (ii) the domain name was registered with a bad faith intent to profit from the DYNAMIS mark. *See People for the Ethical Treatment of Animals v. Doughney*, 263 F.3d 359, 367 (4th Cir. 2001) (discussing the elements of a cybersquatting claim). In essence, Brenner argues that the complaint fails to set forth a claim for cybersquatting because (i) he has been using the domain name in issue to advertise his business under the name DYNAMIS since 1997, well before plaintiff began using the DYNAMIS mark in its own business starting in 2008; and (ii) Brenner already prevailed in defending his DYNAMIS.COM domain from plaintiff's cybersquatting allegations in an arbitration pursuant to the Uniform Domain Name Dispute Resolution Policy ("UDRP") proceeding before the National Arbitration Forum. Neither of these arguments warrants a threshold dismissal of the complaint. At the

---

[5] *But see Heathmount A.E. Corp. v. Technodome.com*, 106 F. Supp. 2d 860, 868 (E.D. Va. 2000) (holding that before proceeding to default judgment against a foreign domain name registrant, an *in rem* ACPA plaintiff must complete service in accordance with Rule 4(f), Fed. R. Civ. P.). *Heathmount* is unpersuasive here; although Rule 4(n) requires that notice of the *in rem* action be given to claimants of the property—here, the claimant being Brenner as domain name holder and registrant—the ACPA itself provides the method for notifying domain name registrants of *in rem* actions against their domain names, rendering it unnecessary—contrary to Heathmount—to effect service in accordance with Rule 4(f), Fed. R. Civ. P.

[6] *See* Rule 12(b), Fed. R. Civ. P. ("No defense or objection is waived by joining it with one or more other defenses or objections in a responsive pleading or in a motion.").

motion to dismiss stage, the allegations in plaintiff's complaint must be taken as true, and extrinsic evidence or allegations cannot be considered. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).[7]. Thus, while Brenner's contentions regarding his ownership and legitimate use of the DYNAMIS.COM domain, if true, cast significant doubt on plaintiff's ability to succeed in this action, those contentions cannot be considered at this stage.[8] The complaint itself alleges (i) that the domain name is confusingly similar to plaintiff's DYNAMIS mark; (ii) that the domain name is not used in connection with a legitimate website, but rather, it is used to direct internet users to third party commercial websites and to display revenue-generating links; and (iii) that the domain name was registered with bad faith intent to profit from plaintiff's trademark. Compl. ¶ 16-20, 23. These allegations are sufficient to state a claim for cybersquatting under the ACPA. Although the complaint's allegations survive threshold attack, it appears that they are hotly

---

[7] Specifically, dismissal pursuant to Rule 12(b)(6), Fed. R. Civ. P., is appropriate where the complaint does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 129 S. Ct. at 1949 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). It follows that to survive a Rule 12(b)(6) motion to dismiss, a complaint must contain "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 129 S. Ct. at 1949. And, in this respect, it is also true that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to *legal* conclusions." *Id.* (emphasis added). In sum, the complaint must allege facts that, if true, plausibly satisfy each element of the claims for which relief is sought.

[8] It is worth noting that the burden at all times rests with plaintiff to demonstrate bad faith under the ACPA. This is so even when the domain name defaults—that is, even if no answer is filed on behalf of the domain name—and plaintiff subsequently seeks to convert the default to a default judgment under Rule 55, Fed. R. Civ. P. Under those circumstances, a court hearing the motion for a default judgment retains the discretion to require, *inter alia*, proof by plaintiff of certain facts rather than simply accepting the complaint as true in all respects. *See EEOC v. CDG Mgmt., LLC*, 2010 U.S. Dist. LEXIS 124919, at *5-6 (D. Md. Nov. 24, 2010); *see also United States v. Moradi*, 673 F.2d 725, 727 (4th Cir. 1982) (noting that trial judges are "vested with discretion, which must be liberally exercised," concerning the entry of default judgment, and emphasizing the "clear policy" in the Federal Rules of Civil Procedure encouraging dispositions on the merits). Thus, even though the complaint does not, and need not, address Brenner's allegations, plaintiff may be required to address such allegations before obtaining a default judgment.

disputed, especially with respect to bad faith. In this respect, it appears that plaintiff's allegation of bad faith will be sharply disputed with Brenner contending that he and BBTT acquired the DYNAMIS.COM domain name well before plaintiff began using the DYNAMIS mark. It is important to note that resolution of this and other factual disputes will require the presentation of competent testimonial and documentary evidence under the Federal Rules of Civil Procedure and the Federal Rules of Evidence, whether that resolution occurs at the summary judgment stage or trial.[9] Thus, it is unlikely that this matter can be effectively litigated entirely via the mails.

As to Brenner's contention that a UDRP panel already rejected plaintiff's cyberquatting claim with respect to the DYNAMIS.COM domain name, it is well settled that "any decision made by a panel under the UDRP is no more than an agreed-upon administration that is not given any deference under the ACPA." *Barcelona.com, Inc. v. Excelentisimo Ayuntamiento de Barcelona*, 330 F.3d 617, 626 (4th Cir. 2003); *see also Sallen v. Corinthians Licenciamentos LTDA*, 273 F.3d 14, 28 (1st Cir. 2001) ("a federal court's interpretation of the ACPA supplants a WIPO panel's interpretation of the UDRP"); *Sallen v. Corinthians Licenciamentos Ltda.*, 273 F.3d 14, 26 (1st Cir. 2001) (affording complete, independent review of a UDRP proceeding rather than addressing it under the Federal Arbitration Act). Indeed, generally speaking, the UDRP panel's conclusion is inadmissible hearsay that cannot be considered in resolving this case.[10] Thus, the UDRP's findings and recommendations are not dispositive here, and they

---

[9] *See* Rule 56(c), Fed. R. Civ. P. (parties' assertions of fact on summary judgment must be supported by competent evidence in the record); Rule 901, Fed. R. Evid. (requiring authentication as a condition precedent to admissibility of evidence); Rule 801-04, Fed. R. Evid. (rendering out of court statements inadmissible for the truth of the matter asserted unless subject to an exception).

[10] *See Barcelona.com*, 330 F.3d at 626 (noting that an arbitration before the UDRP is relevant to ACPA actions in only two contexts, namely in limiting domain name registrars' liability and in suits for reverse domain name hijacking, neither of which is applicable here). Of course,

cannot form the basis of a motion to dismiss. In sum, because the complaint alleges a sufficient, plausible basis for an *in rem* cybersquatting claim under the ACPA, Brenner's motion to dismiss must be denied.

**III.**

It remains to resolve plaintiff's motion for a schedule for a responsive pleading to be filed. Plaintiff has appropriately demonstrated, and Brenner concedes, that Brenner (as sole proprietor of BBTT) is the domain name holder and is not subject to personal jurisdiction in the United States. Furthermore, plaintiff has complied with the publication requirements of the magistrate judge's publication order. It is appropriate, therefore, to set a deadline for an appearance to be entered on behalf of the domain name, either by counsel or by Brenner *pro se* on behalf of the domain name, so that an answer may be filed or else the domain name be adjudicated in default.

Accordingly, and for good cause,

It is hereby **ORDERED** that Brenner's *pro se* motion to dismiss received on April 4, 2011, be deemed **FILED** as of April 4, 2011.

It is further **ORDERED** that Brenner's *pro se* motion to dismiss is **DENIED**.

It is further **ORDERED** that domain name DYNAMIS.COM shall, by and through counsel or appropriate *pro se* party, file an answer or other respond to the complaint in this matter no later than 5:00 p.m., Friday, May 20, 2011. If a timely answer is not filed, default may be entered against the domain name and further consequences may follow, including the entry of default judgment.

---

statements made by a party in the course of UDRP proceedings may be offered by an adverse party pursuant to Rule 801(d)(2), Fed. R. Evid.

The Clerk is directed to send a copy of this Order to all counsel of record and to Brenner using the address included in his filing.

Alexandria, Virginia
April 27, 2011

/s/
**T. S. Ellis, III**
**United States District Judge**